In The 



Court of Appeals



Ninth District of Texas at Beaumont


________________



NO. 09-08-00251-CR


 _____________________



BRADLEY JASON JORDAN, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 9th District Court


Montgomery County, Texas


Trial Cause No. 08-04-03999 CR







MEMORANDUM OPINION


 A jury convicted appellant Bradley Jason Jordan of felony murder of a child (1) and
assessed his punishment at thirty years in prison.

 Raising one issue on appeal, Jordan contends the trial court erred by allowing
testimony from the deceased child's maternal grandmother as to what punishment appellant
should receive "because she was speaking for the community." The child victim died of
"blunt force injuries of head." During the punishment phase, the State questioned the child's
maternal grandmother as follows:

 Q: [(Prosecutor]: Through the course of this, this case, we've talked to you
about all the various possibilities that could happen; and, you know, you're
aware that 12 people on the jury have returned a verdict of murder. And you
are aware of what the consequences of that can be?

 A: [Grandmother]: Yes.

 Q: And my question to you is, as far as what you think is appropriate for
punishment when someone injures a child to the degree that causes their death,
what -- what is appropriate? As a member of the community, what do you
think is appropriate?

 [Defense Counsel]: Make the same objection. It is improper for this witness
to make a comment on what is proper.

 [The Court]: Overruled.

 . . . .

 A: I think he should get the maximum punishment for what he did. He took
our baby.


Prior to the question to the grandmother, the prosecutor had asked the deceased child's
maternal grandfather a similar question:

 Q: [Prosecutor]: I know, Floyd, that you and I have only talked about this
briefly; but I know you have had some time to think about it. So I'm going to
ask you, what do you want to happen to this defendant as far as punishment?

 [Defense Counsel]: That's completely improper.

 [The Court]: It's overruled.

 A: [Grandfather]: The--the thing that I want is he took a life from our family,
from everybody. His life is what I want.

 Q: And when you say that, tell the jury what you mean, because, as you know,
this is not a capital case.

 A: Life. Life in prison. 


The prosecutor also asked the child's mother what she thought would be an appropriate
punishment for the defendant. At trial, Jordan's counsel objected to these questions (posed
to the grandmother, grandfather, and the mother) as being improper. However, on appeal
Jordan challenges only the question to the grandmother, which references the community.

 During the punishment phase, evidence may be offered on matters the trial court
deems relevant to sentencing. See Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1)
(Vernon Supp. 2008). Jordan's argument seems to be that the prosecutor's questions to the
grandmother, in effect, elicited testimony similar to improper jury argument, and that the
question and answer amounted to a request to have the jury assess punishment "by calling
to the community for justice." A prosecutor's argument would be improper if it induced the
jury to reach a verdict based upon the demands, expectations, or desires of the community
rather than on the evidence. See Borjan v. State, 787 S.W.2d 53, 56 (Tex. Crim. App. 1990);
Cortez v. State, 683 S.W.2d 419, 421 (Tex. Crim. App. 1984); Harris v. State, 122 S.W.3d
871, 887-88 (Tex. App.--Fort Worth 2003, pet. ref'd); Mata v. State, 952 S.W.2d 30, 33
(Tex. App.--San Antonio 1997, no pet.). 

 The State may properly remind the jury that its decision can reflect a desire for strong
law enforcement. See Goocher v. State, 633 S.W.2d 860, 864 (Tex. Crim. App. 1982). Mere
reference to "the community" does not constitute an improper appeal to community
expectations. Harris, 122 S.W.3d at 888; see Rivera v. State, 82 S.W.3d 64, 69 (Tex. App.--San Antonio 2002, pet. ref'd); Smith v. State, 966 S.W.2d 111, 112 (Tex. App.--Beaumont
1998, pet. ref'd). We are not persuaded that the prosecutor's question essentially asked the
jury to assess punishment on the basis of what the community expected or desired. See
Hawkins v. State, 278 S.W.3d 396, 404-05 (Tex. App.--Eastland 2008, no pet.). Rather, the
question essentially asked about the wishes of the witness concerning punishment. 

 To be relevant in the punishment phase of a non-capital felony trial, evidence must
be helpful to the jury in determining the appropriate sentence for a particular defendant given
the facts of the case. See generally Hayden v. State, No. PD-00860-07, 2009 WL 928569,
at *2 (Tex. Crim. App. April 8, 2009). Case-law suggests that a non-victim witness should
not be asked for her recommendation of a particular punishment. See Sattiewhite v. State,
786 S.W.2d 271, 290 (Tex. Crim. App. 1989) (In considering expert witness testimony
regarding appeal from punishment, the Court of Criminal Appeals stated that "[t]he argument
that a witness may recommend a particular punishment to the trier of fact has been soundly
rejected."). 

 Some courts of appeals have extended this prohibition to the opinion of a victim
concerning punishment. See Wright v. State, 962 S.W.2d 661, 663 (Tex. App.--Fort Worth
1998, no pet.) (Victim's opinion on "type of punishment [defendant] should receive was
irrelevant . . . in assessing a proper punishment."); Hughes v. State, 787 S.W.2d 193, 196
(Tex. App.--Corpus Christi 1990, pet. ref'd) (The victim's testimony on an appropriate
sentence was not relevant.); Gross v. State, 730 S.W.2d 104, 105-06 (Tex. App.-Texarkana
1987, no pet.) (Victim's testimony on question of punishment would have little value,
because the witness is in no better position to form an opinion than the jury itself.); but see
Taylor v. State, 109 S.W.3d 443, 454 (Tex. Crim. App. 2003) ("A punishment
recommendation from a non-victim -- especially an expert -- entails a situation significantly
different from a recommendation from the victim, who, at least arguably, was in a position
to give an opinion based rationally upon his observations of the crime itself and who is the
one who suffered from the crime in the first place."). 

 In a death penalty case, the Court of Criminal Appeals strongly discouraged "the State
from soliciting or making any references to the wishes of the victim's family or friends about
the punishment to which the defendant should be sentenced." Simpson v. State, 119 S.W.3d
262, 272 (Tex. Crim. App. 2003). And in Sattiewhite, also a capital punishment case, the
Court of Criminal Appeals stated that the opinion of an expert witness on what punishment
should be assessed was not something that would assist the jury. Sattiewhite, 786 S.W.2d
at 290. However, in Fryer v. State, 68 S.W.3d 628, 630-31 (Tex. Crim. App. 2002), the
Court of Criminal Appeals permitted, at the trial's punishment phase, the trial court's
consideration of the victim's punishment recommendation contained in a PSI report. The
Court explained that Fryer was distinguishable from Sattiewhite, because the latter case
involved the unsuitability of expert testimony at the punishment phase on the issue of
appropriate punishment, rather than the "propriety of including in a PSI the opinion of the
crime victim" on punishment. Fryer, 68 S.W.3d at 631. 

 Interpreting appellant's brief broadly, and assuming error in the admission of
testimony from this witness, we review the whole record to determine whether the error was
harmless or requires a new punishment hearing. See generally Solomon v. State, 49 S.W.3d
356, 365 (Tex. Crim. App. 2001). The jury likely was not surprised that the victim's
maternal grandmother thought the defendant should receive the maximum sentence,
something the jury may have assumed in this case without her testimony, and the jury likely
understood that a victim's family "will be emotional and therefore less objective about what
punishment should be given." See Simpson, 119 S.W.3d at 274. The jury did not assess the
maximum punishment wished for by the witness. The defendant testified during the
punishment phase, and his testimony most likely had a controlling impact on the jury's
assessment. After examining the record as a whole, we conclude the admission in evidence
of the grandmother's wishes concerning punishment in this case does not require a reversal
of the trial court's judgment. Tex. R. App. P. 44.2(b); Solomon, 49 S.W.3d at 365
("[S]ubstantial rights are not affected by the erroneous admission of evidence 'if the
appellate court, after examining the record as a whole, has fair assurance that the error did
not influence the jury, or had but a slight effect.'") (quoting Johnson v. State, 967 S.W.2d
410, 417 (Tex. Crim. App. 1998)). Appellant's issue is overruled. The judgment is affirmed.

 AFFIRMED. _________________________________

 DAVID GAULTNEY

 Justice 

 

Submitted on July 7, 2009

Opinion Delivered July 29, 2009 

Do Not Publish


Before Gaultney, Kreger, and Horton, JJ.
1. The indictment charged Jordan as follows: "Jordan . . . did then and there, by act
commit a felony, namely: Injury to a Child, and in the course of or in furtherance of, the
felony, the Defendant did commit an act clearly dangerous to human life, namely: causing
blunt force trauma to Mason Alvis' head, thereby causing the death of an individual, namely,
Mason Alvis[.]"